IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

VS.                                                                                                    No. 4:05CR97-D-B

LOUIS WOODS

OPINION DENYING MOTION TO SUPPRESS

Presently before the Court is Defendant's motion to suppress. On February 14, 2006, the Court heard testimony and oral argument in the above styled case addressing Defendant's motion. Upon due consideration of the testimony and proof presented, the Court finds that the motion shall be denied.

*A. Factual Summary*

On the morning of July 13, 2005, Special Agents Tonya Barrett, Ron Johnson, and Matthew Wlodarczek of the Bureau of Immigration and Customs Enforcement initially contacted the Defendant Louis Woods at his place of employment, Big Star grocery store. The agents asked Woods to accompany them to his house because they wanted to interview him about some of his internet activities. The agents obtained Woods' name from a list generated by an international investigation into child pornography. An email account linked to Woods and a credit card issued in his name were used to obtain a membership to a website known to contain child pornography. Upon arriving at his residence, the agents briefly spoke to Woods outside his residence and then requested to view Woods' computer and other equipment capable of internet access. Woods denied their request stating that there were some things in the house he did not want the agents to see. He informed the agents that they would have to obtain a search warrant.

The agents realized that they did not have enough information to meet the probable cause standard for a search warrant. The agents maintained surveillance near Woods' house. Agents Barrett and Johnson drove to a cul-de-sac where they could view the rear of Woods' house from a distance of fifty to seventy-five yards. Meanwhile, Agent Wlodarczek maintained surveillance from the front of the house. Within an hour, the agents observed Woods carrying an object appearing to be a trash can to his backyard. Woods then appeared to empty the contents of that trash can onto a brush pile. Woods then disappeared into a shed-like structure. When he emerged, the agents observed Woods carrying what appeared to be a gasoline container toward the discarded contents of the trash can. Woods then poured gasoline on the pile of debris. Upon observing this behavior, Agent Johnson ran toward Woods and observed him lighting a piece of paper. Agent Johnson stepped in front of Woods to prevent him from lighting the pile on fire. Agents Johnson and Wlodarczek moved Woods away from the pile. Upon initial viewing of the contents of the pile, the agents recognized the material as images of child pornography. The partially lit paper also appeared to be a printed image of child pornography.

After observing the images of child pornography, the agents detained Woods and read him his Miranda rights. Woods signed the Miranda form stating he was informed of his rights. Agent Wlodzrczek then conducted an interview with Woods. After conducting the interview, the agents decided to obtain a search warrant. The agents first attempted to obtain a search warrant at the Federal Courthouse in Greenville, Mississippi. However, the agents were unable to locate a judicial officer. Greenville is approximately 55 miles away from Greenwood. The agents then sought to obtain a search warrant by telephone from Magistrate Judge Alexander in Oxford, Mississippi, some ninety miles away. At 4:50 P.M., Magistrate Judge Alexander issued a search warrant for Woods' house. Pursuant to a search warrant, the agents entered Woods' residence

and seized numerous items containing images of child pornography.

Woods has been charged with knowing possession of images of child pornography that traveled in interstate commerce in violation of 18 U.S.C. § 2252A(a)(5)(b) and 18 U.S.C. §2256(8). The Defendant now moves to suppress admission of this evidence at trial. Defendant challenges the seizure of the original images, the validity of the search warrant, and the admissibility of the images and other evidence obtained after the search warrant was issued. The Defendant asserts that his Fourth Amendment rights were violated when the agents entered onto his property without a proper search warrant. The government asserts that exigent circumstances existed allowing the agents to enter the Defendant's property to prevent the destruction of evidence. A hearing was held in Aberdeen, Mississippi on February 14, 2006.

*B. Discussion*

The Fourth Amendment protects against illegal searches and seizures. U.S. Const. amend. IV. When, as the case is here on the initial search, a warrantless search or seizure is challenged the government bears the burden of establishing its validity by a preponderance of the evidence. U.S. v. Mattock, 415 U.S. 164, 178 n.14, 94 S. Ct. 988, 996, 39 L. Ed. 2d 242 (1974) (the burden of proof at suppression hearing should be no greater than proof by a preponderance of the evidence); U.S. v. Walled, 388 F.3d 161, 164 (5th Cir. 2004) (warrantless searches are presumptively unreasonable).

1. Plain View

The "plain-view" doctrine is an exception to the general rule that warrantless searches are presumptively unreasonable. Horton v. California, 496 U.S. 128, 133, 110 S. Ct. 2301, 2306, 110 L. Ed. 2d 112 (1990). The "plain-view" doctrine must justify an exception to concerns implicated to seizures rather than searches. Id. The criteria for the "plain-view" doctrine were

laid down by Justice Stewart in Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." Coolidge, 403 U.S. at 453. The Supreme Court has found the plain-view doctrine applicable in several instances. First, the police may inadvertently find evidence while in "hot pursuit" of a fleeing suspect. Warden v. Hayden, 387 U.S. 294, 87 S.C. 1642, 18 L. Ed. 2d 782 (1967). Second, an object comes into plain view during a search incident to an arrest. Chime v. California, 395 U.S. 752, 89 S. Ct. 2034 (1969). Finally, the police officer is not searching for evidence against the accused, but comes across an incriminating object. Harris v. United States, 390 U.S. 234, 88 S.C. 992, 19, L. Ed. 2d 1067 (1968).

In Horton, the Supreme Court modified the "plain-view" doctrine by adding three conditions. First, the Supreme Court stated it was an essential predicate that the officer seizing the evidence did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed. Horton, 496 U.S. at 137. The Court also stated that the item must be in plain view, and its incriminating character must be readily apparent. Id.; Arizona v. Hicks, 480 U.S. 321, 326, 107 S. Ct. 1149, 1154, 94 L. Ed. 2d 347 (1987).

In the case *sub judice*, there is a question whether the agents arrived in the Defendant's backyard without violating the Fourth Amendment. Without a showing of exigent circumstances, the Government's plain-view argument would fail. The Court strongly considers United States v. Whaley, 781 F.2d 417 (5th Cir. 1986), an important case out of this district. In Whaley, the Fifth Circuit held evidence of marijuana should have been suppressed by the District Court because the incriminating nature of the evidence was not known until the police entered onto the land. 781 F.2d at 419-20. There a sheriff observed what appeared to be marijuana, but

he could not determine precisely if it was marijuana until he entered onto the defendant's land. Id. The Fifth Circuit found that because he was unsure whether he observed marijuana or not, the warrantless search was unreasonable. Id.

Here, the agents do not claim that they viewed the item from afar or with the help of binoculars or a telescopic lens. The agents saw the image of child porn lying on the ground after preventing the Defendant from burning the debris pile. Thus, the item was in plain-view if the agents arrived at the scene without violating the Fourth Amendment. Finally, it is clear from the testimony that the incriminating character of the printed image was readily apparent. The testimony from two agents states it was clearly child pornography. However, in light of the precedent set in Whaley, this evidence would have to be suppressed unless an exigent circumstance existed. This case is distinguishable from Whaley because here there was an attempt to destroy the evidence. The Court will now look to see if exigent circumstances existed allowing agents to enter Defendant's property without a warrant and plainly view incriminating evidence.

2. Exigent Circumstances

A warrantless entry is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the entry. Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). Exigent circumstances cannot be caused by the government's own actions or inaction. United States v. Vega, 221 F.3d 789, 799 (5th Cir. 2000). Situations where exigent circumstances have given rise to a warrantless entry include: (1) the possibility that evidence will be removed or destroyed; (2) the pursuit of the suspect; and (3) immediate safety risks to officers and others. United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001). See United States v. Richard, 994 F.2d 244, 248 (5th Cir. 1993). The determination for

when exigent circumstances exist is a factual determination for which there is no set formula. United States v. Blount, 123 F.3d 831, 837 (5th Cir. 1997), *cert. denied*, 522 U.S. 1138, 118 S. Ct. 1101, 140 L. Ed. 2d 155 (1998). However, the Fifth Circuit has created the following non-exhaustive list of factors to determine whether an exigent circumstance justifies a warrantless search: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed: (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband. Blount, 123 F.3d at 837; Rico, 51 F.3d at 501; Richard, 994 F.2d at 248.

Whether exigent circumstances exist is a question of fact. Richard, 994 F.2d at 248. A court must look to the totality of circumstances surrounding the agent's actions, mindful that a review is "more akin to examining a video tape by instant replay than to examining a snapshot." Rico, 51 F.3d at 501. A court should review the entirety of the agent's actions, especially those actions leading up to the exigency alleged to have necessitated the entry onto the defendant's property. United States v. Howard, 106 F.3d 70, 74 (5th Cir.1997). The Government bears the burden of demonstrating that exigent circumstances existed. United States v. Thompson, 700 F.2d 944, 946 (5th Cir.1993).

In the case *sub judice*, the government contends that the Defendant's removal and attempt to destroy evidence created an exigent circumstance that allowed its agents to enter onto his property without a warrant. The government's contention that Woods was destroying evidence relies on the following inferences: (1) Wood probably had images of child pornography in his house; (2) Woods was aware that the government was investigating him; (3) Woods probably

assumed the government would attempt to obtain a search warrant after his refusal to voluntarily allow a search of his house; (4) the material dumped onto the ground probably contained images of child pornography.

The agents investigating Woods assumed that it was likely that images of child pornography existed inside Woods' home. The agents knew that in the past Woods had purchased a membership to a website known to contain child pornography. Usually, individuals view and download pictures and other items when they purchase a membership to such a website. In addition, the agents went to the Defendant's place of employment to question him. The agents asked him a few questions and asked to search his computer. A reasonable person would have known they were under investigation at that point. Third, Woods probably assumed that this was not the end of the investigation and that the agents wanted to search his house. Again, a reasonable person would assume the agents would probably return with a search warrant. Fourth, when the agents saw Woods attempting to burn paper removed from his house, a reasonable investigator would assume that he was burning images of child pornography.

From the time Woods denied access to his house until the time he attempted to burn the images of child pornography, less than one hour elapsed. The agents maintained surveillance to see what actions Woods would take and whether he would attempt to remove the computer or any evidence from his house. In fact, Woods tried to do just that within an hour of being questioned. Therefore, when the agents observed him trying to burn paper-like material, it is a logical assumption that he was trying to destroy evidence related to their investigation. Therefore, when viewed in light most favorable to the government, the agents' inferences are supported by the record and the attempted burning of the paper created a reasonable belief that Woods was attempting to remove or destroy evidence of child pornography. Therefore, the

Court finds that an exigent circumstance existed allowing the agents to enter onto Woods' property and prevent the destruction of evidence.

3. Manufactured Exigency

Although the Court has held that an exigent circumstance justified a warrantless entry onto Woods' property, the Court must still determine whether the Government manufactured this exigency. "Whereas exigent circumstances are the exception to the warrant requirement, a manufactured exigency is the exception to the exception. United States v. Howard, 106 F.3d at 78. See United States v. Rico, 51 F.3d at 502. To determine whether government agents manufactured an exigency, the Court looks to whether (1) there was sufficient time to secure a warrant, and (2) whether the exigency was created by unreasonable law enforcement tactics. United States v. Rico, 51 F.3d at 502-03.

It is well-settled law that exigencies deliberately manufactured by the Government violate the Fourth Amendment, especially when the Government's actions are intentionally taken to avoid the warrant requirement. See Rico, 51 F.3d at 502; United States v. Webster, 750 F.2d 307, 327 (5th Cir. 1984). However, the Fifth Circuit recognizes that deliberately manufactured exigencies are not the only ones that violate the Fourth Amendment. Bad faith on the part of law enforcement officers is not required. United States v. Howard, 106 F.3d at 78. See e.g. United States v. Rico, 51 F.3d at 502 (holding that "[e]xigencies can be manufactured guilelessly or ulteriorly," and bad faith by the officers is not required). The Fifth Circuit has found numerous times that exigencies were manufactured despite the absence of evidence showing an intent to subvert the warrant requirement. Id. The Fifth Circuit has held that when the Government controls the timing of an investigation, exigent circumstances arising out of law enforcement actions consistent with that timing are deemed manufactured. See United States v. Hultgren, 713

F.2d 79, 86 (5th Cir. 1983); United States v. Thompson, 700 F.2d at 950-51; United States v. Scheffer, 463 F.2d 567, 575 (5th Cir. 1971), *cert. denied*, 409 U.S. 984, 93 S. Ct. 324, 34 L. Ed. 2d 248 (1972).

The Fifth Circuit rejected the rule in the D.C. Circuit which stated, "[a]s long as the police measures are not deliberately designed to invent exigent circumstances, we will not second-guess their effectiveness." United States v. Socey, 846 F.2d 1439, 1449 D.C. Cir. 1987), *cert. denied*, 488 U.S. 858, 109 S. Ct. 152, 102 L. Ed. 2d 123 (1988). Instead, the Fifth Circuit stated that "Fourth Amendment jurisprudence has consistently emphasized that we should focus on the reasonableness of the search and seizure-not on the whether the officers acted in good or bad faith." United States v. Rico, 51 F.3d at 502 n. 18. The Court must look to the totality of the circumstances and, when viewed in the light most favorable to the Government, determine whether the agent's investigative tactics were reasonable. United States v. Howard, 106 F.3d at 79.

In the case *sub judice*, the Court finds that there was not sufficient time to obtain a warrant. First, the agents testified that the information obtained from their preliminary investigation was not sufficient to meet the probable cause burden. Therefore, prior to interviewing Woods, the agents were not in a position to obtain a search warrant. Second, the agents could not obtain a warrant in the short period of time that it took Woods to discard the material, pour gasoline on it and attempt to burn it. Thus, the Court finds that there was not sufficient time to obtain a search warrant. In addition, the Court notes that the agents prevented Woods from destroying the evidence, secured the evidence, then obtained a search warrant before searching the house or any other location on the property.

The Court now turns to whether the agents' investigative tactics were reasonable. The

Defendant argued briefly that the government created exigent circumstances by confronting him. However, the agents performed a "knock and talk." investigation. Federal courts have recognized the "knock and talk" strategy as a reasonable investigative tool when officers reasonably suspect criminal activity. See United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir. 1990). (Reasonable suspicion cannot justify the warrantless search of a house, but it can justify the agents' approaching the house to question the occupants."), *cert. denied*, 502 U.S. 907, 112 S. Ct. 299, 116 L. Ed. 2d 243 (1991). Thus, the Court finds that their initial contact with the suspect was reasonable and did not manufacture an exigency. In addition, the Court finds that the officers steps to set-up surveillance were reasonable. Here, it was the unprovoked conduct of the suspect that led the agents to believe that he was about to destroy evidence. See Generally United State v. Rico, 51 F.3d at 506. Therefore, the Court finds that the agents' fears of destruction of the evidence was reasonable. Thus, the Court finds that the agents acted reasonably in their investigation and did not manufacture the exigency. Therefore, the Court finds that the agents entry onto the Defendant's land was permissible, and the discovery of evidence plainly viewed on the ground was valid.

4. Fruits of the Poisonous Tree

Under the fruits of the poisonous tree doctrine, "all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the government shows there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation." United States v. Rivas, 157 F.3d 364, 368 (5th Cir. 1998). In the seminal case Wong Sun v. United States, the Supreme Court stated

> We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by

> exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

371 U.S. 471, 487-88 (1963). Thus, "an otherwise legal search or arrest cannot stand if probable cause for it was established only by a prior illegal search." United States v. McKim, 509 F.2d 769, 775 (5th Cir. 1975).

In consideration of the Court's findings on exigent circumstances, the Defendant's fruits of the poisonous tree argument is without merit. Thus, the search warrant obtained after the warrantless entry onto the Defendant's land was valid, and the evidence discovered subject to the search warrant is permissible.

5. Validity of the Search Warrant

The Defendant raised several objections to the validity of the search warrant. First, Defendant alleges that there was not a signed affidavit to support the search warrant. The Court notes that after a thorough review of the record and file, that a signed affidavit by Special Agent Tonya Barrett was attached to the original search warrant authorized and signed by Magistrate Judge Alexander. Thus, this objection is without merit.

Second, the Defendant claims that he was not served personally with the search warrant. Rule 41(f)(3) of the Federal Rules of Criminal Procedure states: "The officer executing the warrant must: (A) give a copy of the warrant and a receipt of property taken to the person from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property." An occupant does not have to be present at the time the search warrant is performed. United States v. Gervato, 474 F.2d 40 (3d Cir. 1973), *cert. denied*, 414 U.S. 864, 94 S. Ct. 39, 38 L. Ed. 2d 84. In light of the preceding facts, the Court finds that the search warrant was valid and there was no violation of the Defendant's Fourth Amendment rights in obtaining such warrant or executing such warrant.

*C. Conclusion*

Consistent with the foregoing discussion, the Court concludes that (1) the picture of child pornography was in plain view of the customs agent; (2) the warrantless entry onto the defendant's property was justified by the exigent circumstance of preventing evidence from being destroyed; (3) the government did not manufacture exigent circumstances; (4) the warrantless entry was justified, therefore making the fruits of the poisonous tree argument meritless; and (5) the search warrant was valid. For the foregoing reasons, the Court finds that the government did not violate the Defendant's Fourth Amendment rights. Therefore, the Defendant's motion to suppress evidence is denied.

A separate order in accordance with this opinion shall issue this day.

This the 17th day of February 2006.

/s/ Glen H. Davidson
Chief Judge